BILLY W. SIPES AND WALTRAUD E. SIPES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sipes v. Commissioner
Docket No. 513-75
United States Tax Court
T.C. Memo 1977-146; 1977 Tax Ct. Memo LEXIS 293; 36 T.C.M. (CCH) 617; T.C.M. (RIA) 770146; May 16, 1977, Filed *293 Bobby G. Beazley, for the petitioners. Maurice W. Gerard, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax of petitioners and additions to tax as follows: Additions to Tax Year
Deficiency
Sec. 6653(b) [1]
1967
$ 9,828.50
$ 4,914.25
1968
5,953.43
2,976.72
1969
32,859.73
16,429.87
1970
26,391.92
13,195.96
Respondent concedes that in the absence of fraud the period of limitatins on assessment for all taxable years involved herein has expired. Petitioners concede that their taxable income was understated in each of the taxable years involved; therefore, the only issue for decision is whether any part of the underpayment of tax was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Billy W. Sipes and Waltraud E. Sipes, who resided in North Augusta, South Carolina, at the time the petition *294 was filed herein, filed joint Federal income tax returns for the taxable years 1967, 1968, 1969 and 1970 with the Internal Revenue Service Center, Chamblee, Georgia. Throughout the taxable years herein, petitioners operated a night club in Augusta, Georgia, known as the Partridge Inn Lounge. In 1971, the club, also known as the P.I., was one of the most popular clubs in Augusta. Because of the club's notoriety, in the fall of that year Internal Revenue Agent John W. Burke decided to go there for a drink and to observe the activities while on his way home from a meeting of his investment club. On this occasion the lounge was experiencing a large volume of business. Although without any tangible information to support his impression, Agent Burke felt that the prices charged by the club for drinks-- $1 for beer and $1.50 for mixed drinks--were too high for the Augusta area. He, therefore, decided to initiate an "independent pick-up" or requisition of petitioners' tax return to ascertain whether the income reported was "in line" with the volume of business and the prices charged. Agent Burke's requisition was returned to him indicating that no return had been filed by petitioners *295 because he did not have their correct social security numbers. He then contacted Mr. Sipes who assured him that a return had been filed and, indeed, subsequent investigation produced petitioners' original return on file with the Internal Revenue Service. Petitioners, during the taxable years in question, utilized the Dome Bookkeeping System which provides for daily recording of income and weekly recording of expenses paid by check with cumulative totals. It is a system used by many individuals who use the cash method of accounting. Mrs. Sipes maintained the books and records. Petitioners voluntarily turned over to Agent Burke the retained copy of the 1970 joint Federal income tax return, two Dome Weekly Bookkeeping Records for 1970, 12 bank statements for the Partridge Inn account with Georgia Railroad Bank, three bank statements for petitioners' personal account at Georgia Railroad Bank and 11 folders containing paid bills, employment tax returns, band contracts and sales tax returns. After examination of the books and records, Agent Burke concluded that they were inadequate to calculate petitioners' taxable income and upon investigation Agent Burke learned that petitioners *296 maintained a relatively high standard of living. It was at this point that Agent Burke decided to make a computation of petitioners' net worth. In computing petitioners' net worth, inquiries were made of them regarding whether they had received gifts or inheritances. Petitioners indicated that they had received neither gifts nor inheritances and that all of the assets they possessed were acquired as a result of their own labors. The relatively small taxable income shown on petitioners' return for the taxable year 1970 which, in conjunction with the popularity of the Partridge Inn, heightened Agent Burke's suspicions and prompted him to intensify his investigation to ascertain whether petitioners had reported all of their income. He requisitioned petitioners' returns for 1966, 1967, 1968 and 1969 and expanded his examination to those years. Petitioners informed Agent Burke that Mr. Paul Huckaba prepared their Federal income tax return for 1970 and that they would make arrangements for Agent Burke to meet with him. Petitioners' books and records included personal as well as business expenses and reflected expensing of items properly chargeable to a capital account and depreciated *297 or amortized over their useful lives. The records purported to be those of the Partridge Inn Lounge; therefore, some of petitioners' personal items, such as capital gains and losses, were not reflected. However, the books were maintained in ink, contained no alterations, were regular on their face and reflected a basic bookkeeping not inconsistent with Mrs. Sipes' rather limited knowledge of accounting. Agent Burke did not undertake a detailed analysis of the books and records but merely scrutinized them to ascertain whether the receipts and expenditures reported supported his observation of the club's business. Agent Burke, when accompanied by Special Agent Abbott, did not prepare a memorandum of contact to record the questions submitted to petitioners and their answers to those inquiries. Agent Abbott asked petitioners whether they had a safe deposit box and they told him they did but they did not use it. He did not request to look at the safe deposit box. In addition, Agent Burke did not attempt to ascertain whether cash from the Partridge Inn was deposited intact each day at the club's bank in order to corroborate or refute the gross receipts accounted for in the books *298 and records maintained by petitioners. Petitioners advised Agent Burke as to the amounts of Georgia sales tax paid and by "backing into the amount of gross sales" Agent Burke determined that gross sales per books exceeded sales per sales tax returns. Agent Burke did not independently contact the State of Georgia to get petitioners' state sales tax returns to verify the amounts reported. The Georgia State sales tax returns were prepared by Mr. Huckaba. Petitioners, neither of whom are highly educated nor knowledgeable with respect to accounting or tax matters, relied upon Mr. Paul Huckaba to prepare State sales and Federal income tax returns from the books and records they submitted to him for the taxable years involved herein. Mr. Huckaba was known as a "gypsy-type tax preparer" because he operated out of his car. Petitioners relied solely upon Mr. Huckaba to transfer the amounts shown on their business records to their Federal income tax returns; they did not check the accuracy of his work by matching the receipts he reported for tax purposes against those recorded in their records. For the taxable year 1970, Mr. Huckaba, in preparing the income tax return, omitted approximately *299 $33,000 of gross receipts that was recorded in the books maintained by petitioners. In 1969, some $35,000 recorded on petitioners' books and records was not included on the Federal tax return for that year prepared by Mr. Huckaba. Similar mistakes in transcribing amounts from petitioners' books and records to their Federal tax return were made by Mr. Huckaba in each of the taxable years 1967 through 1970. Although Agent Burke found that substantial errors were made by Mr. Huckaba in each of the taxable years 1969 and 1970, he did not investigate or independently make computations to ascertain whether similar mistakes were made in the taxable years 1967 and 1968. On their application for a whiskey bond, dated May 1967, petitioners showed assets of $15,500 and liabilities of $3,500 with a resulting net worth of $12,000. As of December 13, 1966, Agent Burke calculated that petitioners' net worth was $4,504.35. The difference is largely attributable to the amount by which the value of the stock and bonds shown in petitioners' financial statement, which Agent Burke could not identify, exceeds the value of the inventory not shown on the financial statement but reflected in Agent *300 Burke's computation. A financial statement prepared by petitioners dated February 28, 1969, and submitted to Georgia Railroad Bank reflects a net worth of $79,407.61. The net worth statement attached to the statutory notice of deficiency indicates petitioners' net worth to be $39,940.88 as of December 31, 1969. In addition to the passage of time, the primary difference is attributable to the treatment of fixtures and equipment; the statutory notice included only fixtures and equipment acquired during the taxable year because petitioners were expensing these items, while petitioners included fixtures and equipment in total after adjustment for depreciation. In a financial statement dated May 31, 1970, submitted by petitioners to Georgia Railroad Bank, they showed a net worth for the taxable year ended December 31, 1970, to be $143,886.24. In addition to the dissimilar treatment of fixtures and equipment, the difference is primarily attributable to valuation of petitioners' Cascade Drive property at cost in the statutory notice while petitioners valued that property at fair market value on their financial statement. Throughout the investigation petitioners cooperated with Agent *301 Burke and the items reflected in the net worth statement were derived from the records supplied by petitioners, bank records, records of a stock brokerage house or public records. The Commissioner, in his statutory notice of deficiency, determined on the basis of net worth computations prepared for each of the taxable years 1967, 1968, 1969 and 1970 that petitioners understated their taxable income in the respective amounts of $33,313.30, $21,099.08, $68,428.80 and $61,723.64. The Commissioner determined cash on hand as of December 31 in each of the taxable years 1966 through 1970 to be $230.The Commissioner further determined that a portion of the underpayments in tax in each of the taxable years 1967 through 1970 was due to fraud. ULTIMATE FINDINGS OF FACT No part of the understatement in taxable income of petitioners for the taxable years 1967, 1968, 1969 or 1970 was due to fraud with intent to evade tax. OPINION This is another fraud case the Commissioner never should have attempted to try.Assessment of additional tax for all four years was barred except for fraud. Because the Commissioner had the burden of proof of fraud, he was required to go forward with his proof. *302 It consisted solely of the testimony of Revenue Agent Burke who was a poor witness. His testimony was confusing and vague. He was evasive and unresponsive to questions on cross-examination and questions by the Court. We were left with the impression that he was not being forthright and was careless and partial in performing his examination of petitioners' income tax returns. For example, he determined that petitioners' bookkeeper, Mr. Huckaba, failed to transcribe some $33,000 of gross receipts from petitioners' books and records to their income tax returns for 1970 and he made a similar error of $35,000 for 1969 but Agent Burke made no effort to see if similar errors were made for 1967 and 1968. Although petitioners admitted to Agent Burke that they had a safe deposit box which they did not use, he did not ask to examine the contents of the box. A description of the activities of Agent Burke consists more of what he did not do than what he did. [2]
At the conclusion of respondent's case, counsel for petitioners moved for a decision in their favor on the grounds that respondent had failed to prove *303 fraud.We granted petitioners' motion. Respondent surely knows what it takes to prove fraud. If he has some policy of presenting for trial each and every fraud case that his agents recommend, he should re-examine his policy. If such a policy exists it is intellectually dishonest, basically unfair to taxpayers, and needlessly burdensome on the Courts. The only evidence of fraud in the instant case was substantial omissions of income. . However, it is well established that, in a net worth case, such omissions do not represent clear and convincing evidence sufficient for imposition of the fraud penalty. ; , affd. ; . Even considering the substantial understatements of income as evidence of fraud, it is extremely weak in light of the explanation of Agent Burke that petitioners' bookkeeper, Mr. Huckaba, failed to correctly transfer gross sales from the books to the tax returns for *304 two of the four years involved. We suspect that if Agent Burke had compared the other two years, he might have been enlightened as to the cause of the understatement of income for those years.In his usual evasive manner, Agent Burke reluctantly admitted on cross-examination that he would not want Mr. Huckaba to prepare his tax returns after testifying that Mr. Huckaba was competent although he failed to transfer at least $68,000 of gross receipts from the books to the tax returns for two taxable years. Even accepting Agent Burke's testimony at face value, which is not warranted in view of his demeanor as a witness, petitioners passed other fraud tests with flying colors. They were cooperative with Agent Burke. There was no evidence of concealment. Entries in the books and records were made in ink and bore no alterations. The bookkeeping system, although a single entry system, was admitted by Agent Burke to be widely used. All of the information used by Agent Burke to prepare his net worth statement was available from records petitioners turned over to him from bank records, from brokerage account records and from public records. Nothing in his testimony indicates that he experienced *305 any difficulty in conducting his investigation. He was assisted by a special agent who was not called to testify, nor was his absence explained. Respondent presented no evidence that petitioners dealt in cash. Apparently Agent Burke did not believe they did because he never inspected their safe deposit box. We conclude, therefore, accepting respondent's proof in its most favorable light, the Commissioner failed to make a prima facie case of fraud. Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Cf. .↩